IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROBERT W. PRESTON,**

        **Plaintiff,**

v.                                           No. CIV-14-0278 KG/LAM

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

        **Defendant.**

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Plaintiff's *Motion to Remand or Reverse (Doc. 24)*, and memorandum in support [*Doc. 25*], both filed September 5, 2014 (hereinafter, collectively, "motion"). On November 3, 2014, Defendant filed a response to the motion [*Doc. 26*], and, on November 18, 2014, Plaintiff filed a reply [*Doc. 27*]. United States District Judge Kenneth J. Gonzales referred the motion to the undersigned for proposed findings and a recommended disposition, if necessary. [*Doc. 17*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 11*]. For the reasons set forth below, the Court recommends that Plaintiff's motion be **GRANTED in part** and

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

**DENIED in part** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I.   Procedural History

On January 22, 2004, Plaintiff was found to be disabled as of December 1, 2002. [*Doc. 11-9* at 2].   Plaintiff's primary diagnosis was "Affective Disorder," and his secondary diagnosis was "Pain Disorder."   *Id.*   Pursuant to the continuing disability review process, Plaintiff was determined to no longer be disabled as of January 1, 2010.   [*Doc. 11-6* at 30-39]. Pursuant to Plaintiff's request (*id.* at 44), Administrative Law Judge Larry Shepherd (hereinafter "ALJ") conducted a hearing on August 22, 2012.   [*Doc. 11-4* at 2-32].   At the hearing, Plaintiff was present, was represented by counsel, and testified.   *Id.* at 4, 11-27.   In addition, Vocational Expert (hereinafter "VE"), Leslie White, was present and testified.   *Id.* at 4, 28-32.   On February 22, 2013, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff's disability ended as of January 2, 2010.   [*Doc. 11-3* at 13-34]. Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 9), and, on March 11, 2014, the Appeals Council denied Plaintiff's request for review (*id.* at 2-7), which made the ALJ's decision the final decision of the Commissioner.   On March 21, 2014, Plaintiff filed his complaint in this case.   [*Doc. 1*].

## II.   Standard of Review

The standard that courts apply in reviewing the Commissioner's decision is the same regardless of whether the issue is termination of benefits or the initial denial of benefits.   *See Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).   The Court must determine whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal

standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

Where continuation of benefits is at issue, as with an initial disability determination, the Court applies a sequential evaluation process. However, unlike the initial determination, the sequential evaluation process applicable to the termination of benefits consists of eight steps. 20 C.F.R. § 404.1594(f). In another variation from the initial evaluation process, the burden in termination cases rests with the Commissioner at each step. *See Hayden v. Barnhart*, 374 F.3d 986, 988, 990-91 (10th Cir. 2004) (citations omitted). If the ALJ finds that the claimant is unable to engage in substantial gainful activity at any point, then he will not proceed through the remaining steps. 20 C.F.R. § 404.1594(f). At the first two steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *Id.* The ALJ next asks whether there has been medical improvement and whether the improvement is related to the claimant's ability to do work.[2] *Id.* If there is medical improvement related to work ability, the ALJ evaluates the severity of the claimant's combined impairments and re-assesses the claimant's residual functional capacity ("RFC"). *Id.* Assuming the ALJ deems the impairments severe, the final two steps require the ALJ to apply the RFC in order to determine whether the claimant can return to past work and, if not, whether the claimant, considering his age, education, and past work experience, can do other work. *Id.*

### IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on January 16, 1960. [*Doc. 11-4* at 11]. Plaintiff has worked in construction (*id.* at 16), and as a clerical worker (*Doc. 11-9* at 14). Plaintiff alleges that he is unable to work because of "bi-polar, anxiety, hep C, lower neck [and] back pain due to . . .

---

[2] Even where there is no medical improvement or the improvement is not related to the ability to do work, the evaluation may continue if an enumerated exception applies.   20 C.F.R. § 404.1594(f)(5).

depression." [*Doc. 11-9* at 7]. Plaintiff's medical records include: two Disability Determination Examinations, one by Michael F. Gzaskow, M.D., dated August 25, 2009 (*Doc. 11-12* at 3-7), and one by W. Murray Ryan, M.D., dated October 23, 2009 (*id.* at 28-30); a Psychiatric Review Technique by Elizabeth Chiang, M.D., dated September 1, 2009 (*id.* at 8-21); two Mental Residual Functional Capacity Assessments, one by Elizabeth Chiang, M.D., dated September 1, 2009 (*id.* at 22-25), and one by Michael Miller, MSN, dated August 22, 2012 (*Doc. 11-15* at 27-29); a Physical Residual Functional Capacity Assessment by K. Glass, dated December 28, 2009 (*Doc. 11-12* at 31-38); a Medical Consultant's Review of Psychiatric Review Technique by Dan M. Cox, Ph.D., dated January 22, 2010 (*Doc. 11-14* at 26-28); a Medical Consultant's Review of Mental Residual Functional Capacity Assessment by Dan. M. Cox, Ph.D., dated January 22, 2010 (*id.* at 29-30); two Case Analyses, one by Janice Kando, M.D., dated July 22, 2010 (*Doc. 11-15* at 18), and one by Renate Wewerka, Ph.D., dated August 19, 2010 (*id.* at 19); a statement of Exertional Limitations by Anne Hinton, P.A., dated August 21, 2012 (*id.* at 25); records from Anne Hinton, P.A. (*Doc. 11-16* at 12-14 and *Doc. 11-17* at 2-3, 9-11); and records from Northern New Mexico Gastroenterology Associates, P.A. (*Doc. 11-18* at 2-3 and *Doc. 11-19* at 46-56). Where relevant, Plaintiff's medical records are discussed in more detail below.

In his decision, the ALJ noted that the most recent favorable medical decision finding that Plaintiff was disabled is the determination dated January 22, 2004, in which Plaintiff was found to have the following medically determinable impairments: affective disorder and pain disorder. [*Doc. 11-3* at 15]; *see also* [*Doc. 11-9* at 2]. In that decision, Plaintiff was found to be disabled as of December 1, 2002. [*Doc. 11-3* at 15]. The ALJ explained that this decision "is known as the 'comparison point decision' or CPD." *Id.* At step one of the eight-step evaluation, the ALJ

found that Plaintiff did not engage in substantial gainful activity through January 1, 2010, the date Plaintiff's disability ended.  *Id.*  The ALJ found that, as of January 1, 2010, Plaintiff had the following medically determinable impairments: bipolar disorder, anxiety, posttraumatic stress syndrome, hepatitis C, and degenerative disc disease of the cervical and lumbar spine.  *Id.*  The ALJ stated that "[t]he records overall show medical improvement in [Plaintiff's] mental health." *Id.* at 19.  At step two, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1525 and 404.1526).  *Id.*  At step three, the ALJ found that medical improvement occurred as of January 1, 2010.  *Id.* at 21.  At step four, the ALJ found that the medical improvement is related to the ability to work.  *Id.* at 22.  Because the ALJ found that Plaintiff's medical improvement is related to Plaintiff's ability to work, the ALJ skipped to step six.  *See* 20 C.F.R. § 404.1594(f)(4).  At step six, the ALJ found that Plaintiff continued to have a severe impairment or combination of impairments.  [*Doc. 11-3* at 22].

Before step seven, the ALJ determined that Plaintiff has the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, that Plaintiff can sit, stand and walk for about 6 hours during an 8-hour workday, and can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  *Id.* at 23.  The ALJ found that Plaintiff cannot climb ladders, ropes, or scaffolds, can occasionally reach overhead, and is to avoid all exposure to unprotected heights. *Id.*  The ALJ also found that Plaintiff can understand, remember, and carry out simple, routine, and repetitive tasks, and can respond appropriately to supervisors, co-workers, and usual work situations, "but have [only] occasional contact with the general public."  *Id.*  In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements

6

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the [ALJ's RFC]." *Id.*  The ALJ stated that he "gives great weight to the State agency consultant's findings that [Plaintiff's] physical impairments do not cause limitations that preclude him from work." *Id.* at 25.  The ALJ stated that he gives no weight to the form completed by Anne Hinton, PA, on August 21, 2012, regarding Plaintiff's physical abilities, stating that the form does not indicate that it is supported by testing or evidence, does not set out any diagnosis, there was no photographic evidence to support the degree of limitation indicated by Ms. Hinton, and the medical record indicates that Plaintiff exercises, swims and walks several times a week.  *Id.*  The ALJ also states that Ms. Hinton is not considered an acceptable medical source.  The ALJ stated that he gives great weight to the state agency consultant's findings that Plaintiff's mental impairments do not cause limitations that preclude him from work.  *Id.* at 26.  The ALJ stated that he gives no weight to the Mental RFC Assessment completed by Michael Miller, MSN, on August 22, 2012, because the ALJ finds no support for the conclusions reached by Mr. Miller.  *Id.*  The ALJ outlined Plaintiff's daily activities, that the evidence shows that Plaintiff was found consistently to have largely normal mental status examinations over the period from 2009 through August 2012, and that Plaintiff did not have a history of counseling.  *Id.*  At step seven, the ALJ found that Plaintiff has no past relevant work, so the ALJ proceeded to the eighth step.  *Id.*

    At the eighth and final step, the ALJ noted that on January 1, 2010, Plaintiff was an individual approaching advanced age.  *Id.*  The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English.  *Id.*  The ALJ stated that "[t]ransferability of job skills is not an issue because [Plaintiff] does not have past relevant work." *Id.* (citing 20 C.F.R. § 404.1568).  The ALJ found that, considering Plaintiff's age, education, work

experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  The ALJ stated that she asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC] as of January 1, 2010," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as the following: small parts assembler, bakery worker, and automatic car wash attendant.  *Id.* at 27.  The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles."  *Id.*  The ALJ concluded that "as of January 1, 2010, [Plaintiff] was capable of making a successful adjustment to work that existed in significant numbers in the national economy."  *Id.*  The ALJ, therefore, determined that Plaintiff's disability ended as of January 1, 2010.  *Id.*

## V.   Analysis

In his motion to reverse or remand, Plaintiff contends that the ALJ erred for the following reasons: (1) the ALJ did not articulate and apply the correct burden of proof (*Doc. 25* at 3-4); (2) the ALJ erred at step five by (a) stating that Plaintiff could perform jobs that exist in Oklahoma, not New Mexico (*id.* at 5-6), and (b) regarding the hypothetical and Plaintiff's vocational history given to the VE (*id.* at 11-12); and (3) the ALJ erred in his RFC assessment by (a) failing to give the proper weight and consideration to the medical opinions of Anne Hinton, Dr. Gzaskow, and Michael Miller (*id.* at 6-11 and 12-15), (b) relying on the opinions of Dr. Junck and Dr. Brown (*id.* at 15-18), and (c) relying on Plaintiff's reports of biking, running and swimming (*id.* at 18-19).  In response, Defendant argues that substantial evidence supports the ALJ's findings, the ALJ did not err in his RFC determination, and the ALJ did not err at the final step regarding whether there are jobs in the national economy Plaintiff is able to perform.  [*Doc. 26* at 7-15].

### A. Burden of Proof

Plaintiff first contends that the ALJ erred by failing to note that the burden of proof shifted to the Defendant at step five, and that the ALJ's failure to mention this shift "leaves the reviewing court ignorant of whether [Defendant] appreciated this important legal standard." [*Doc. 25* at 3]. In response, Defendant contends that the ALJ noted the requirement that the burden shifts to Defendant at step five to show that a significant number of jobs exist in the national economy that Plaintiff possesses the capacity to perform, but that the ultimate burden of persuasion to show that Plaintiff cannot perform those jobs remains with Plaintiff. [*Doc. 26* at 14]. In Plaintiff's reply, he contends that the Commissioner is incorrect in stating that Plaintiff retains the ultimate burden at step five. [*Doc. 27* at 3-4].

First, the Court notes that, even though the parties refer to step five for this claim, in a continuation of benefits case the step at which the ALJ determines whether there are a significant number of jobs in the national economy that a claimant can perform is at <u>step eight</u>. *See* 20 C.F.R. § 404.1594(f)(8). Second, the Court notes that the burden of proof in continuation of benefits cases rests with the Commissioner at *each* step. *See Hayden*, 374 F.3d at 988 and 990-91. Therefore, both Plaintiff and the ALJ erred in stating that the burden *shifts* to Defendant at step five. *See* [*Doc. 25* at 3] and [*Doc. 11-3* at 14]. The cases and Federal Register citation upon which Defendant relies for her contention that the burden remains with Plaintiff at this step are distinguishable because they discuss the burden of proof in cases in which an initial determination of disability is at issue. *See* [*Doc. 25* at 14] (citing *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *Raymond v. Astrue*, 621 F.3d 1269, 1271 (10th Cir. 2009), and 68 Fed. Reg. 511-53-01, at *51155, 2003 WL 22001943 (Aug. 26, 2003)). Here, however, Defendant has the burden of proof at each step because this is a continuation of benefits case. *See Smith v. Apfel*, No. 98-5015,

162 F.3d 1174, 1998 WL 747121 at *3 (10th Cir. Oct. 20, 1998) (unpublished) (explaining that the burden of proof set forth in *Hawkins* does not apply in a continuation of benefits case).

Despite the ALJ incorrectly stating the burden of proof in this case, Plaintiff does not cite to any authority that found that making such a statement is reversible error. Plaintiff does not assert that any harm flowed from the ALJ's misstatement, so the Court finds that any error was harmless and is not a basis for remand. *See Shineski v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (citations omitted). Because the Court finds *infra* that this case should be remanded for other reasons, the Court directs Defendant on remand to ensure that the ALJ applies the proper burden of proof at each step.

### B.   The ALJ's RFC Determination

The Court will consider Plaintiff's claims regarding the ALJ's RFC determination before considering Plaintiff's step-eight claims regarding whether there are jobs in the national economy he is able to perform because, if the Court finds that the case should be remanded based on the ALJ's RFC determination, the Court may decline to reach Plaintiff's step-eight claims. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (declining to reach the claimant's claims regarding the VE's testimony because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

Plaintiff contends that the ALJ erred in his RFC determination regarding his consideration of the opinions of Anne Hinton, Michael Miller, Dr. Gzaskow, Dr. Junck, and Dr. Brown. [*Doc. 25* at 8-18]. Plaintiff also contends that the ALJ erred by relying on reports of Plaintiff's activities of biking, running and swimming, because the reports are not supported by evidence in the record. *Id.* at 18-19. In response to these claims, Defendant states that the ALJ did not err in his RFC determination because he properly evaluated the medical opinions before him. [*Doc. 26* at 10]. In his reply, Plaintiff contends that the opinions of Anne Hinton and Michael Miller support a finding of a continuing disability in Plaintiff's physical and mental areas (*Doc. 27* at 4), that the ALJ did not use the correct timeframe for his consideration of evidence (*id.* at 5-6),[3] and that Defendant cannot provide *post hoc* reasons for the ALJ's findings (*id.* at 5). Plaintiff further contends that the ALJ erred in relying on a Social Security ruling that has been rescinded. *Id.* at 7-8 (citing AR 92-2(6)). Finally, Plaintiff contends that the ALJ failed to address the limitations found by Dr. Gzaskow in the ALJ's RFC determination (*id.* at 8), and erred in his rejection of the opinions of Anne Hinton and Michael Miller (*id.* at 11-12).

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. § 404.1545(a)(1). *See also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. Soc. Sec. Rep. 96-8p at *5.

---

[3] The Court notes that this is a new claim that was not raised in Plaintiff's motion and, thus, will not be considered by the Court.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id.* Because the ALJ must consider the whole record, he is prohibited from picking and choosing "among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted). When there are multiple opinions regarding medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions. *Hamlin*, 365 F.3d at 1215 (citation omitted).

### 1. *Anne Hinton's Opinion*

On August 21, 2012, Anne Hinton, P.A., opined that Plaintiff can occasionally lift and/or carry 10 pounds, can frequently lift and/or carry less than 10 pounds, can stand and/or walk less than 2 hours in an 8-hour workday, can sit for a total of less than about 6 hours in an 8-hour workday, must alternate sitting and standing, must periodically lie down during the day, and is limited in pushing and/or pulling in his upper and lower extremities. [*Doc. 11-15* at 25]. These findings contradict the ALJ's RFC determination regarding Plaintiff's physical abilities. *See* [*Doc. 11-3* at 23]. The ALJ gave no weight to the form completed by Ms. Hinton, stating that the form does not indicate that it is supported by testing or evidence, does not set out any diagnosis, there was no photographic evidence to support the degree of limitation indicated by Ms. Hinton, and the medical record indicates that Plaintiff exercises, swims and walks several times a week.

*Id.* at 25. The ALJ also stated that Ms. Hinton is not considered an acceptable medical source. *Id.*

The Court finds that the ALJ's reasoning regarding why he gave no weight to Ms. Hinton's opinion is not supported by the record. First, the ALJ's statement that the opinion is not supported by any testing, evidence, or diagnosis is incorrect as Ms. Hinton examined and diagnosed Plaintiff with chronic back pain on February 1, 2012. *See* [*Doc. 11-16* at 13]. Plaintiff was seen by Ms. Hinton for back pain on other occasions as well. *See* [*Doc. 11-17* at 2] and [*Doc. 11-17* at 10]. The ALJ's statement that he gave the opinion no weight because it was not supported by photographic evidence is without merit as photographic evidence is not required in the Social Security Administration's regulations or in cases interpreting those regulations in order for an ALJ to give weight to a medical opinion. In addition, the ALJ's reasoning that the opinion should be given no weight because the record indicates that Plaintiff exercises, swims and walks several times a week is not entirely supported by the record. While the record includes notations from Northern New Mexico Gastroentoerology Associates on five follow up visits that Plaintiff biked, jogged, swam, and walked 1-3 times a week (*see Doc. 11-18* at 3, and *Doc. 11-19* at 47, 49, 53 and 56), nowhere else in the record is there any evidence that Plaintiff engaged in this level of exercise. Moreover, these notations contradict the medical evidence from Ms. Hinton that Plaintiff has chronic back pain, and the ALJ fails to explain why he chose to rely on the notations from the Gastroenterology Associates instead of the evidence of Plaintiff's chronic back pain. *See* Soc. Sec. Rep. 96-8p at *7 (The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"); *see also Carpenter*, 537 F.3d at 1265 (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

13

Finally, the ALJ's rejection of Ms. Hinton's opinion because she is not an acceptable medical source is not properly supported.   Pursuant to Soc. Sec. Rep. 06-03p, 2006 WL 2329939, at *4-5, ALJs must consider the following factors, when relevant, in evaluating medical sources who are not "acceptable medical sources:"

(1) How long the source has known and how frequently the source has seen the individual;

(2) How consistent the opinion is with other evidence;

(3) The degree to which the source presents relevant evidence to support an opinion;

(4) How well the source explains the opinion;

(5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

(6) Any other factors that tend to support or refute the opinion.

The ALJ did not discuss whether Ms. Hinton's opinion is consisted with other evidence, whether Ms. Hinton presents relevant evidence to support her opinion, or whether she has a specialty or area of expertise related to Plaintiff's impairment.   The Court finds that the ALJ's failure to do so is legal error.   For these reasons, the Court finds that the ALJ erred in his consideration of Ms. Hinton's opinion and, on remand, should consider her opinion in accordance with Soc. Sec. Rep. 96-8p and Soc. Sec. Rep. 06-03p.

### 2.   *Michael Miller's Opinion*

In a Mental RFC Assessment, completed on August 22, 2012, Michael Miller found that Plaintiff had several marked and moderate limitations in his abilities relating to understanding and memory, sustained concentration and persistence, social interaction, and adaptation (*Doc. 11-15* at 27-28), and stated that it is his opinion that Plaintiff "will never be able to function in the work place again" (*id.* at 29).   Most of these limitations were not accounted for in the ALJ's RFC

determination. *See* [*Doc. 11-3* at 23]. The ALJ gave no weight to Mr. Miller's findings, reasoning that the conclusions reached by Mr. Miller were not supported in the record. *See* [*Doc. 11-3* at 26] (citing *Doc. 11-15* at 27-29). In support of this decision, the ALJ noted that evidence in the record showed that Plaintiff: lived alone; prepared his own meals; went to class or work until the job ended; shopped; could follow simple instructions; could get along with people on a one-on-one basis; went to garage sales; collected antiques; joined a twelve-step program; was attending college; had 70 credit hours and a GPA of 2.5; could do basic math and could count; pays bills; has a debit card; can cook; does chores; takes care of his personal needs; and has an e-mail account and a Facebook account. *See* [*Doc. 11-3* at 26]. The ALJ further noted that the evidence showed that Plaintiff had "largely normal mental status examinations" over the period from 2009 to August 2012, and did not have a history of counseling. *Id.*

The Court finds that the ALJ sufficiently supported his decision to discount Mr. Miller's opinion pursuant to Soc. Sec. Rep. 06-03p by discussing the inconsistencies between the opinion and the evidence in the record. The difference between the Court's finding regarding the ALJ's consideration of Ms. Hinton's opinion and the ALJ's consideration of Mr. Miller's opinion is that the ALJ's reasons for rejecting Mr. Miller's opinion are supported by evidence in the record. *See, e.g.,* [*Doc. 11-4* at 13-15, 21, 25-26] (Plaintiff's testimony at the hearing), and [*Doc. 11-12* at 22-24] (Mental RFC Assessment). Therefore, Plaintiff's contention that the ALJ's assessment of Mr. Miller's opinion is incorrect invites the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, which the Court cannot do. *See Hamlin*, 365 F.3d at 1214. The Court, therefore, finds that this claim should be denied.

### 3. *Opinions of Dr. Gzaskow, Dr. Junck and Dr. Brown*

Next, Plaintiff contends that the ALJ erred in his consideration of Dr. Gzaskow's opinion because the ALJ did not include Dr. Gzaskow's limitation regarding Plaintiff's understanding direction in a structured and supportive environment. *See* [*Doc. 25* at 11] and [*Doc. 11-12* at 6]. Plaintiff contends that the ALJ erred regarding the opinions of Dr. Junck and Dr. Brown because, *inter alia*, the ALJ only relied on the portions of their opinions that supported the ALJ's RFC determination. [*Doc 25* at 15-18]. While the ALJ discussed the opinions of these three doctors (*see Doc. 11-3* at 24-25), the ALJ failed to state the weight he gave to any of their opinions. This is legal error because the ALJ is required to explain the weight given to each medical source's opinions and the reasons for assigning that weight. *See Hamlin*, 365 F.3d at 1215. Moreover, the ALJ's failure to discuss the portion of Dr. Gzaskow's opinion that Plaintiff is limited to understanding directions in a structured/supportive environment is also in error because that opinion is not accounted for in the ALJ's RFC determination. *See Carpenter*, 537 F.3d at 1265 (explaining that an ALJ is prohibited from picking and choosing among medical reports and using portions of evidence favorable to his position while ignoring other evidence). For these reasons, the Court finds that this case should be remanded for consideration of the opinions of Dr. Gzaskow, Dr. Junck and Dr. Brown, in accordance with the holdings of *Hamlin* and *Carpenter*.

### 4. *Reports of Plaintiff's Exercise*

Plaintiff contends that the ALJ erred in relying on Plaintiff's reports of biking, running, and swimming one to three times a day. [*Doc. 25* at 18] (citing *Doc. 11-3* at 19). First, the Court notes that the ALJ did not find that Plaintiff reported engaging in these activities one to three times per *day* but, instead, the ALJ noted that Plaintiff "reported biking one to three times a *week*,

jogging one to three times [a] *week*, swimming one to three times a *week*, and walking one to three times a *week*." [*Doc. 11-3* at 19] (citing a 122-page exhibit, *Doc. 11-18* at 2-68 and *Doc. 11-19* at 2-56).  In the exhibit cited by the ALJ for this statement, the Court found notations from Northern New Mexico Gastroenterology Associates on five follow up visits that Plaintiff biked, jogged, swam, and walked 1-3 times a week.  *See* [*Doc. 11-18* at 3] and [*Doc. 11-19* at 47, 49, 53 and 56] (emphasis added).  The Court agrees with Plaintiff that this notation contradicts other evidence in the record regarding Plaintiff's abilities, such as evidence of his back pain and postural limitations.  *See, e.g.,* [*Doc. 11-12* at 29-30], [*Doc. 11-15* at 25], [*Doc. 11-16* at 13], and [*Doc. 11-17* at 2 and 11].  As stated *supra*, the ALJ's rejection of Ms. Hinton's opinion in part based on this evidence without addressing that it conflicted with other evidence in the record was in error.  However, to the extent Plaintiff is asking the Court to remand based on the ALJ's notation of this evidence, the Court finds that such a claim is without merit because the ALJ did not err by simply noting that this evidence was in the record.  Therefore, the Court recommends denying this claim.

### C.   Plaintiff's Remaining Claims

Because the Court finds that Plaintiff's case should be remanded for further consideration of the opinions of Ms. Hinton, Dr. Gzaskow, Dr. Junck and Dr. Brown, the Court finds that it is unnecessary to reach Plaintiff's remaining claims regarding whether there are jobs in the national economy he is able to perform, because those claims may be affected by the ALJ's findings on remand.  *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's claims regarding the VE's testimony because they may be affected by the ALJ's resolution of the case on remand) and *Lopez*, 371 Fed. Appx. at 889 and 892 n.6 (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach

claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that Plaintiff's ***Motion to Remand or Reverse (Doc. 24)*** be **GRANTED in part** and **DENIED in part** as set forth above, and the decision of the Commissioner be **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

*Lourdes a. Martinez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**